# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

DARLENE ROGALSKI,                          )    CASE NO. 1:12-CV-2295
                                           )
           Plaintiff,                   )
                                           )
      v.                                 )    MAGISTRATE JUDGE
                                           )    VECCHIARELLI
                                           )
CAROLYN W. COLVIN,                         )
      Acting Commissioner of Social      )
      Security,                          )    **MEMORANDUM OPINION AND**
                                           )    **ORDER**
           Defendant.                   )

Plaintiff, Darlene Rogalski ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"),[1] denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423, 1381(a).  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final decision is REVERSED and REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

## I.    PROCEDURAL HISTORY

On October 6, 2008, Plaintiff filed her application for SSI, alleging a disability onset of May 1, 1995.  (Transcript ("Tr.") 67.)  The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law

---

[1]    On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security.  She is automatically substituted as the defendant in this case pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

judge ("ALJ").  (*Id*.)  On January 18, 2011, an ALJ held Plaintiff's hearing.  (*Id*.)  Plaintiff

participated in the hearing, was represented by counsel, and testified.  (*Id*.)  A

vocational expert ("VE") also participated and testified.  (*Id*.)  On February 24, 2011, the

ALJ found Plaintiff not disabled.  (Tr. 67-76.)  On August 15, 2012, the Appeals Council

declined to review the ALJ's decision, and the ALJ's decision became the

Commissioner's final decision.  (Tr. 1.)

On September 11, 2012, Plaintiff filed her complaint to challenge the

Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in

this case.  (Doc. Nos. 15, 16.)  Plaintiff argues that substantial evidence does not

support the ALJ's determination of her residual functional capacity ("RFC") because the

ALJ erred in assessing medical opinions in the record.

## II.  EVIDENCE

### A.    Personal and Vocational Evidence

Plaintiff was born on March 20, 1956.  (Tr. 171.)  She completed high school.

(Tr. 88.)  Plaintiff had no past relevant work.  (Tr. 75.)

2

**B.    Relevant Medical Evidence**[2]

**1.    Treatment Notes**

On July 13, 2000, Plaintiff arrived at the emergency department at Marymount Hospital ("Marymount") via emergency squad, where police reported that, during an argument with her daughter, Plaintiff had threatened to use a knife harm herself.  (Tr. 262.)  During an examination, Plaintiff was "very inappropriate in her response" to questions.  (*Id*.)  Physicians at Marymount diagnosed her with acute exacerbation of paranoid schizophrenia, and prescribed Risperdal.  (Tr. 263.)  Plaintiff was discharged on July 16, 2000.  (Tr. 262.)

On July 11, 2006, Plaintiff was examined by psychiatrist J. El-Mallawany, M.D., who noted that Plaintiff was taking Zoloft and Risperdal.  (Tr. 336.)  Plaintiff reported that she lived in a trailer with her boyfriend, and that she babysat.  (*Id*.)  She had previously been homeless in August and September 2005.  (Tr. 335.)  Dr. El-Mallawany observed that Plaintiff was "somewhat despondent" with a flat affect.  (Tr. 336.)  Plaintiff reported hearing voices, especially when she watched television.  (*Id*.)  Plaintiff stated that she was "doing okay with Risperdal and Zoloft."  (Tr. 335.)  Dr. El-Mallawany diagnosed Plaintiff with undifferentiated schizophrenia, and instructed her to continue

---

[2]    The ALJ determined that Plaintiff had the severe impairments of hypertension and schizophrenia, in addition to several non-severe impairments.  (Tr. 69.)  Plaintiff does not challenge the ALJ's calculation of her residual functional capacity ("RFC") with respect to her hypertension, or the non-severe impairments identified by the ALJ.  (*See* Plaintiff's Brief ("Pl. Br.").)  Rather, her arguments focus on the ALJ's consideration of the physicians who treated or examined her with respect to her schizophrenia.  Accordingly, this Order and Opinion discusses only the medical evidence relevant to that condition.

taking Risperdal and Zoloft and to return in one month.  (Tr. 338.)

On August 10, 2006, Plaintiff reported that she was still hearing voices "at times," and that she was "feeling okay."  (Tr. 333.)  She was babysitting for her daughter and had "no major issues or problems so far."  (*Id.*)  Dr. El-Mallawany noted that Plaintiff was stable with medication. (Tr. 334.)  On September 21, 2006, Dr. El-Mallawany opined that Plaintiff was "coming along nicely," noting that Plaintiff was "improving" and that her living situation was "better."  (Tr. 332.)  Plaintiff reported that she had not heard voices for one month.  (Tr. 331.)  Dr. El-Mallawany observed that Plaintiff demonstrated a fluid thought process, normal thought content, fair perception, calm behavior and "ok[ay]" judgment.  (*Id.*)

On October 19, 2006, Plaintiff reported to Dr. El-Mallawany that she was "doing fairly well" and was watching her 16-month old grandson seven days each week.  (Tr. 329.)  On January 16, 2007, Plaintiff reported that she was "doing okay" and had no major complaints.  (Tr. 327.)  Dr. El-Mallawany opined that Plaintiff was stabilized.  (Tr. 328.)  On March 22, 2007, Plaintiff reported that she "had no major issues."  (Tr. 325.)  Dr. El-Mallawany opined that Plaintiff was stable, and doing "fairly well."  (Tr. 326.)  Throughout 2007, Dr. El-Mallawany noted Plaintiff's reports that she was feeling "okay" or "doing fairly well," and was babysitting her grandson.  (Tr. 319, 321, 323.)  Dr. El-Mallawany opined that Plaintiff was stable.  (Tr. 320, 322, 324) Plaintiff continued on Risperdal and Zoloft.  (Tr. 320, 322, 324.)

On November 20, 2008, Plainitff reported to Dr. El-Mallawany that she was "doing ok[ay]" and babysitting for her daughter.  (Tr. 339.)  Plaintiff stated that she was "stressed out from [increasing] pressure of daily life."  (*Id.*)  Dr. El-Mallawany opined

4

that Plaintiff, who was taking Risperdal and Zoloft, was stable.  (Tr. 340.)

On December 13, 2008, Dr. El-Mallawany completed a medical source statement.  (Tr. 357-58.)  With respect to making occupational adjustments, she opined that Plaintiff had poor or no ability to: use judgment; maintain attention and concentration for extended periods of time; respond appropriately to changes in a routine setting; relate to co-workers; interact with supervisors; function independently without special supervision; work in coordination or proximity to others without being unduly distracted or distracting; deal with work stresses; and complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 357-58.)  She stated that Plaintiff had a fair ability to follow work rules.  (Tr. 357.) With respect to intellectual functioning, Dr. El-Mallawany opined that Plaintiff had poor or no ability to: understand, remember and carry out complex job instructions; and understand, remember and carry out detailed, but not complex, job instructions.  (Tr. 358.)  She assigned Plaintiff a fair ability to understand, remember and carry out simple job instructions.  (*Id*.)  With respect to making personal and social adjustment, Dr. El-Mallawany opined that Plaintiff had poor or no ability to behave in an emotionally stable manner; relate predictably in social situations; and manage her funds/schedules.  (*Id*.)  She assigned Plaintiff a fair-to-poor ability to socialize, and a fair ability to maintain her appearance and leave home on her own.  (*Id*.)

On March 30, 2009, Dr. El-Mallawany concluded that Plaintiff was "in marginal remission," noting that she lived with her boyfriend.  (Tr. 386.)  She opined that Plaintiff had a "very limited ability to withstand stress."  (*Id*.)  Dr. El-Mallawany continued Plaintiff

5

on Risperdal and Zoloft.  (Tr. 387.)

On January 20, 2010, staff at Rakesh Ranjan M.D. & Associates, Inc. ("Ranjan") examined Plaintiff, noting that she was a "patient of Dr. Ganchorre" with a previous diagnosis of schizophrenia.[3]  (Tr. 433.)  Plaintiff reported mild paranoia and anxiety. (*Id*.)  Staff diagnosed Plaintiff with schizophrenia, paranoid type, and prescribed Risperdal and Zoloft.  (Tr. 439.)

On May 24, 2010, Yolanda L. Ganchorre, M.D., examined Plaintiff at Ranjan, and completed a medical source statement.  (Tr. 423-24, 429-33.)  Plaintiff reported anxiety, excessive worries and panic attacks.  (*Id*.)  Dr. Ganchorre prescribed Risperdal and Zoloft.  (Tr. 431.)  She noted that Plaintiff could not attend regular appointments "due to schedule [with] babysitting."  (Tr. 432.)

In her medical source statement, with respect to making occupational adjustments, Dr. Ganchorre opined that Plaintiff had a poor ability to: follow work rules; use judgment; maintain attention and concentration for periods of two-hour segments; respond appropriately to changes in routine settings; maintain regular attendance and be punctual within customary tolerance; deal with the public; relate to co-workers; interact with supervisors; function independently without supervision; work in

---

[3]     Although  there are no records from Dr. Ganchorre that pre-date January 2010, this notation suggests that, as of January 2010, Plaintiff was already undergoing treatment with Dr. Ganchorre.  In his decision, the ALJ assigned little weight to  Dr. Ganchorre's opinion, in part on the basis that Dr. Ganchorre had only examined Plaintiff one time before completing the medical source statement.  (Tr. 74.)  Given the notation in the January 2010 record, the ALJ's assessment of Plaintiff's treatment history with Dr. Ganchorre may be inaccurate.  However, in her brief, Plaintiff addresses neither this potential discrepancy nor whether substantial evidence supports the ALJ's assessment of Dr. Ganchorre's opinion.

coordination with or proximity to others without being distracted or distracting; deal with work stresses; and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 423-24.)  With respect to intellectual functioning, Dr. Ganchorre assigned Plaintiff a fair or poor ability[4] to understand, remember and carry out complex –  and detailed, but not complex – job instructions, and a poor ability to understand, remember and carry out simple job instructions.  (Tr. 424.)  With respect to making personal and social adjustment, Dr. Ganchorre opined that Plaintiff had a fair ability to maintain appearance and manage her funds and schedule.  (*Id.*)  She assigned Plaintiff a poor rating with respect to her ability to: socialize; behave in an emotionally stable manner; relate predictably in social situations; and leave home on her own.  (*Id.*)  In support of her opinions, Dr. Ganchorre wrote that Plaintiff was "suffering from chronic paranoid schizophrenia – marginal improvement."  (*Id.*)

In December 2010, Dr. Ganchorre examined Plaintiff, noting that Plaintiff was "last seen May 2010," had been off of her medication for the prior four weeks, and was not compliant with appointments.  (Tr. 425.)  Plaintiff reported mood swings, anxiety, excessive worries, irritability, racing thoughts, insomnia, paranoia and auditory hallucinations.  (*Id.*)  Dr. Ganchorre continued Plaintiff on Risperdal and Zoloft.  (Tr. 427.)

---

[4]     Dr. Ganchorre's responses in these areas are not clear.  She placed a checkmark beneath both the fair column and the poor column, and drew an arrow pointing from the checkmark beneath the fair column to the checkmark beneath the poor column.  (Tr. 424.)

7

## 2.   Agency Reports

On January 19, 2009, agency consultant Herschel Pickholtz, Ed.D., examined Plaintiff. (Tr. 360-67.) Plaintiff reported psychiatric hospitalizations in 1995, 2000 and 2005. (Tr. 361.) Dr. Pickholtz noted that he "saw no aberrant behavior" during his examination, and that Plaintiff's dress and hygiene were within the normal range. (Tr. 362.) He opined that Plaintiff's pace and persistence fell within the low average range. (Tr. 362.) Plaintiff described mild affective complaints while on psychiatric medication, including mild depression about once per week. (*Id*.) She reported experiencing auditory hallucinations, consisting of unintelligible whispering, about once each week. (Tr. 363.) Dr. Pickholtz opined that Plaintiff had mild impairments in her ability to: understand and follow instructions; maintain attention and perform simple, repetitive tasks; and relate to others, including co-workers and supervisors. (Tr. 365.) He assigned her a moderate limitation in her ability to withstand the stresses and pressures associated with day-to-day work activities. (*Id*.)

On February 27, 2009, agency consultant John Waddell, Ph.D., completed a psychiatric review technique and mental RFC assessment. (Tr. 367-80, 381-84.) Dr. Waddell diagnosed Plaintiff with schizoaffective disorder, depressed type. (Tr. 368.) In Section I of the mental RFC assessment, Dr. Waddell assigned Plaintiff a moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 382.) He determined that she was not significantly limited (as opposed to having no evidence of limitation) in the ability to: understand and remember detailed instructions; carry out detailed

8

instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; sustain an ordinary routine without supervision; work in coordination with others without being distracted by them; interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and respond appropriately to changes in the work setting.  (Tr. 381-82.)

In Section III of the mental RFC assessment, Dr. Waddell noted that he had given "weight to [Dr. Pickholtz's] opinios, due to congruence with current functioning as offered by medical sources."  (Tr. 383.)  He concluded that Plaintiff "retains the capacity to complete a variety of tasks that do not require a rapid or consistent pace" and "can engage appropriately in simple interactions."  (*Id.*)  He noted that Plaintiff "acknowledges auditory hallucinations, but these are mostly controlled by medications . . . .  They do not interfere with functioning."  (*Id.*)

## C.   Hearing Testimony

### 1.   Plaintiff's Hearing Testimony

At her January 18, 2011 administrative hearing, Plaintiff testified as follows:

On her medication, Plaintiff occasionally heard voices.  (Tr. 88.)  She had difficulty with hygiene, cooking and transportation.  (Tr. 89.)  Plaintiff did not drive.  (*Id.*)  Plaintiff had her mail delivered to a post office box because she believed that someone

9

had tampered with it.  (Tr. 89-90.)  Plaintiff watched her two grandchildren for about

twenty hours each week.  (Tr. 91, 93.)  Plaintiff's daughter – the children's mother – had

told Plaintiff that Plaintiff was not a good care giver because she didn't watch them

closely enough, "but she can't find anybody else that's going to do the job."  (*Id.*)

Plaintiff did not believe she could watch children other than her daughter's children

because she worried that she would start hallucinating or hearing voices around them.

(Tr. 94.)  She watched her daughter's children because her daughter was aware of her

condition and "has to put up with that."  (Tr. 94.)

Plaintiff experienced auditory hallucinations approximately three times each

week, and experienced visual hallucinations four or five times each week.  (Tr. 94-95.)

Plaintiff watched the news, but could not concentrate well on movies.  (Tr. 96.)  She

was able to shop, but occasionally forgot the PIN number for her food assistance card.

(*Id.*)

### 2.     Vocational Expert's Hearing Testimony

The VE testified that Plaintiff's past work consisted of light, medium and heavy

jobs, with special vocational profile ("SVP") scores of 2 and 4.  (Tr. 96-97.)  The ALJ did

not propose a hypothetical to the VE.

### III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she

establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y*

*of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered

disabled when she cannot perform "substantial gainful activity by reason of any

10

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) *and* 416.920(d).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

11

## IV.    SUMMARY OF COMMISSIONER'S DECISION

In his February 24, 2011 decision, the ALJ made the following findings of fact

and conclusions of law:

1.    Plaintiff has not engaged in substantial gainful activity since October 6, 2008, the application date.

2.    Plaintiff has the following severe impairments: hypertension and schizophrenia.

3.    Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4.    Plaintiff has the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c), except that Plaintiff should not work at unprotected heights.  She has mild mental health limitations with maintaining pace and alertness.  She can engage in routine social interactions with customers and coworkers.

5.    Plaintiff has no past relevant work.

6.    Plaintiff was born on March 20, 1956 and was 52 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed.

7.    Plaintiff has at least a high school education and is able to communicate in English.

8.    Transferability of job skills is not an issue because Plaintiff does not have past relevant work.

9.    Considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

10.    Plaintiff has not been under a disability, as defined in the Act, since October 6, 2008, the date the application was filed.

(Tr. 69-76.)

12

## V.    LAW & ANALYSIS

**A.    Standard of Review**

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).  Review must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ.  *Id.*  However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

**B.    Plaintiff's Assignments of Error**

Plaintiff argues that the ALJ erred in assessing and assigning weight to the

13

opinions of Drs. El-Mallawany, Pickholtz and Waddell.

### 1.    Dr. El-Mallawany

Plaintiff argues that the ALJ erred in rejecting the opinion of Dr. El-Mallawany,

Plaintiff's treating psychiatrist.  In his decision, the ALJ discussed Dr. El-Mallawany's

conclusions regarding Plaintiff's limitations:

> As for opinion evidence, [Dr. El-Mallawany] opined in
> December 2008 that [Plaintiff] had poor to no ability in
> multiple areas affecting her ability to make occupational
> adjustments, as well as make personal and social
> adjustments. Dr. [El-Mallawany] opined that [Plaintiff] had a
> poor ability to understand, remember and carry out complex
> or detailed job instructions.  Dr. [El-Mallwany] offered that
> [Plaintiff] had a fair ability to understand, remember and
> carry out simple job instructions.  The sporadic treatment
> records do not support this opinion. [Plaintiff] reported on
> multiple occasions that she was doing "okay."  Further, she
> regularly watched her grandchildren, grocery shopped,
> socialized and performed household chores throughout the
> relevant period.  Therefore, I afford this opinion little weight
> to the extent that it is inconsistent with the [RFC] above.

(Tr. 74.)

"An ALJ must give the opinion of a treating source controlling weight if he finds

the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic

techniques' and 'not inconsistent with the other substantial evidence in the case

record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20

C.F.R. § 404.1527(d)(2)) (internal quotes omitted).  Conversely, a treating source's

opinion may be given little weight if it is unsupported by sufficient clinical findings and is

inconsistent with the rest of the evidence. *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th

Cir. 1993).  If an ALJ decides to give a treating source's opinion less than controlling

14

weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight.  *See* *Wilson*, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)).  This "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is to "let claimants understand the disposition of their cases" and to allow for "meaningful review" of the ALJ's decision, *Wilson*, 378 F.3d at 544 (internal quotation marks omitted).  Where an ALJ fails to explain his reasons for assigning a treating physician's opinion less than controlling weight, the error is not harmless and the appropriate remedy is remand.  *Id.*

Here, Plaintiff's argument is two-fold.  First, she contends that the ALJ's reason for rejecting Dr. El-Mallawany's opinion is "specious" because the fact that Plaintiff reported that she was doing "okay" does not undermine Dr. El-Mallawany's medical opinion that Plaintiff would "essentially decompensate and be unable to engage in these activities on a sustained basis."  (Plaintiff's Brief ("Pl. Br.") at 8.)  This argument is not well taken.  In deciding to give less than controlling weight to Dr. El-Mallawany's opinion, the ALJ did not rely solely on Plaintiff's statements that she was doing "okay" during her treatment.  The ALJ pointed to Plaintiff's sporadic treatment for her schizophrenia, as well evidence that Plaintiff regularly engaged in activities such as babysitting, socializing and grocery shopping to conclude that Dr. El-Mallawany's opinion was inconsistent with the other evidence in the record.  The fact that Plaintiff received sporadic treatment for her mental impairment is apparent from the record, which also includes evidence that Plaintiff engaged in the activities noted by the ALJ.  Accordingly, substantial evidence

15

supports the ALJ's decision to assign less than controlling weight to Dr. El-Mallawany's opinion.

Second, Plaintiff argues that the ALJ also erred with respect to Dr. El-Mallawany's opinion by failing to evaluate the opinion pursuant to the factors required by the relevant regulations.[5]   It is well settled that, where an ALJ "does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009)* (citing 20 C.F.R. § 404.1527(d)(2)).  However, there is no requirement that an ALJ engage in an explicit discussion of each factor.  *See Francis v. Comm'r of Soc. Sec. Admin., 414 F. App'x 802, 805 (6th Cir. 2011)* ("Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons . . . for the weight . . . give[n] [to the] treating source's opinion" – not an exhaustive factor-by-factor analysis.")  (quoting 20 C.F.R. § 404.1527(d)(2)) (alterations in original).

Here, Plaintiff specifically contends that the ALJ erred in failing to consider the length of Dr. El-Mallawany's treatment of Plaintiff, the consistency of Dr. El-Mallawany's

---

[5]    To the extent that Plaintiff asserts that the ALJ failed to specify the weight he assigned to Dr. El-Mallawany's opinion, this argument lacks a basis in the record.  The ALJ's decision reflects that the ALJ assigned it "little weight" to the opinion the extent that it was inconsistent with his determination of Plaintiff's RFC.  (Tr. 74.)

opinion with other evidence in the record, and Dr. El-Mallawany's specialization. Although the ALJ did not explicitly acknowledge either that Dr. El-Mallawany had treated Plaintiff since 2006 or that Dr. El-Mallawany was a psychiatrist, he did offer good reasons to support his decision to assign little weight to Dr. El-Mallawany's opinion.  He noted that it was inconsistent with the rest of the record and that Plaintiff had received sporadic treatment for her mental impairment.  Plaintiff does not explain how the ALJ's decision deprives her of the ability to understand his reasons for rejecting Dr. El-Mallawany's opinion.  Because the ALJ's reasons "permit[] . . . a clear understanding of the reasons for the weight given" Dr. El-Mallawany's opinion, *see Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010), the ALJ's decision satisfies the purposes of the controlling physician rule and, thus, provides no basis for remand in this case.

### 2.    Drs. Pickholtz and Waddell

Plaintiff argues that the ALJ erred in failing to incorporate the restrictions assigned by Drs. Pickholtz and Waddell into Plaintiff's RFC.  Specifically, Plaintiff notes that Dr. Pickholtz assigned Plaintiff a moderate limitation in her ability to withstand the stresses and pressures associated with day-to-day work activities, and that Dr. Waddell assigned her moderate limitations in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.   (Tr. 365, 382.)  Plaintiff contends that the ALJ erred in failing either to incorporate these restrictions into Plaintiff's RFC or to identify his reasons for not doing so.

It is well established that an ALJ is not required to discuss each and every piece

of evidence in the record for his decision to stand.  *See, e.g., Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004).  However, where the opinion of a medical source contradicts her RFC finding, an ALJ must explain why she did not include its limitations in her determination of a claimant's RFC.  *See, e.g., Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (Lioi, J.) ("In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis.").  Social Security Ruling 96-8p provides, "[t]he RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996).[6]

Plaintiff's argument with respect to Dr. Waddell arises out of limitations Dr. Waddell assigned to Plaintiff in the mental RFC assessment he prepared.  However, Dr. Waddell made these findings – that Plaintiff was moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number

---

[6]     Plaintiff asserts that the ALJ assigned great weight to the opinions of both physicians.  This is not correct.  Although the ALJ afforded Dr. Waddell's opinion great weight (Tr. 74-75), he did not assign great weight Dr. Pickholtz's opinion.  Rather, he  discussed some of the findings of Dr. Pickholtz's consultative examination without affording them any specific weight, or otherwise discussing whether they were consistent with the rest of the record.  (Tr. 73.)  However, the regulations require an ALJ to discuss medical evidence that conflicts with his RFC, regardless of the weight he assigns to it.

and length of rest periods – in Section I of the mental RFC assessment.  (Tr. 382.)  The agency's Program Operations Manual System ("POMS"), the operational reference used by agency staff to conduct the agency's daily business, provides that "Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment." POMS DI 24510.060(B)(2)(a).[7]  Rather, Section III "is for recording the mental RFC determination.  It is in this section that the actual mental RFC assessment is recorded." POMS DI 24510.060(B)(4)(a).  "While these administrative interpretations [POMS] are not products of formal rulemaking, they nevertheless warrant respect . . . " *Washington Dep't of Soc. Servs. v. Keffeler,* 537 U.S. 371, 385 (2003). This Court has acknowledged that "Section I of the mental assessment is merely a worksheet that does not constitute the RFC assessment."  *Coleman v. Astrue,* No. 3:10-cv-464, 2010 WL 4955718, *7 (N.D. Ohio Nov. 18, 2010) (White, Mag. J.); *see also Velez v. Comm'r of Soc. Sec.,* NO. 1:09-cv-715, 2010 WL 1487599, *6 (N.D. Ohio Mar. 26, 2010) (Gallas, M.J.) ("In general . . . the ALJ is not required to include the findings in Section I in formulating residual functional capacity.").

In Section III of his mental RFC assessment, Dr.  Waddell concluded that Plaintiff "retains the capacity to complete a variety of tasks that do not require a rapid or consistent pace" and "can engage appropriately in simple interactions."  (Tr. 383.)  This limitation is nearly identical to the limitation assigned by the ALJ in his calculation of

---

[7]     The POMS is available at:
https://secure.ssa.gov/apps10/poms.nsf/Home?readform (last visited Apr. 4, 2013).

Plaintiff's RFC.  (Tr. 72 ("She has mild mental health limitations with maintaining pace and alertness.  She can engage in routine social interactions with customers and coworkers."))  Further, in Section III of his mental RFC assessment, Dr. Waddell did not opine that Plaintiff's limitations in completing a normal workday and workweek and maintaining concentration would otherwise limit her ability to work.  Accordingly, the ALJ's determination of the RFC is not inconsistent with Dr. Waddell's conclusion, and the ALJ did not err in failing to include the restriction from Section I of the mental RFC assessment in Plaintiff's RFC.  Accordingly, Plaintiff's argument regarding Dr. Waddell's opinion lacks merit.

There is, however, merit to Plaintiff's argument with respect to Dr. Pickholtz's findings.  Plaintiff argues that Dr. Pickholtz's conclusion that she was moderately limited in her ability to withstand the stress and pressures associated with day to day work activities contradicts the ALJ's calculation of Plaintiff's RFC; and, thus, the ALJ erred in failing to explain why he did not incorporate that limitation into Plaintiff's RFC.

With respect to mental limitations, the ALJ assigned Plaintiff only mild limitations:

> She has mild mental health limitations with maintaining pace and alertness.  She can engage in routine social interactions with customers and coworkers.

(Tr. 72).  This calculation of Plaintiff's RFC conflicts with Dr. Pickholtz's findings because the ALJ assigned her only a *mild* limitation in the area of concentration and alertness, whereas Dr. Pickholtz assigned Plaintiff a *moderate* limitation in withstanding the stress and pressures associated with day to day work.  The regulations do not define the terms "moderate" and "mild" in this context.  *See, e.g., Hendrickson v. Comm'r of Soc. Sec.*, No. 11-14047, 2012 WL 4006702, * (E.D. Mich. Aug. 16, 2012)

20

("[T]he term 'moderate' is not defined in the regulations or the Program Operations Manual System . . . .") (citing *Cantrell v. McMahon*, 227 F. App'x 321, 322 (5th Cir. 2007)).  However, the ALJ's decision demonstrates that the ALJ used the terms to refer to two different levels of limitation.  At step two of the sequential analysis, the ALJ determined that Plaintiff had mild restrictions in activities of daily living and in concentration, persistence and pace, while determining that she had moderate restrictions in social functioning.  (Tr. 70-71.)  He noted that, in Section II of his mental RFC assessment, Dr. Waddell assigned Plaintiff mild limitations in some areas, and moderate limitations in others.  (Tr. 74.)  At no point in his decision does the ALJ indicate that he uses the terms moderate and mild to refer to the same level of limitation.  Accordingly, even to the extent that a limitation on "maintaining pace and alertness" addresses a limitation regarding the ability to withstand the stress and pressures of working – and this Court is not convinced that it does – the difference in the degrees of the limitations renders the ALJ's RFC in conflict with Dr. Pickholtz's conclusion.  Accordingly, remand is necessary for the ALJ either to explain why he did not incorporate Dr. Pickholtz's opinion regarding Plaintiff's ability to withstand the stress and pressure of day to day work into his determination of Plaintiff's RFC, or to consider that limitation and incorporate it into Plaintiff's RFC.

21

## VI.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and REMANDED for further proceedings consistent with this Memorandum Opinion and Order.


**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: April 30, 2013